EXHIBIT C

**FILED**
Superior Court of California
County of Riverside
6/11/2019
R. Natividad

By Fax

1 | **PESTOTNIK LLP**
Ross H. Hyslop (149358)
2 | 501 W. Broadway, Suite 1025
San Diego, California 92101
3 | Tel: 619.237.3000
Fax: 619.342.8020

4

5 | Attorneys for Plaintiff MATTHEW D. GREENE, on
behalf of himself, the proposed class(es), all others
6 | similarly situated, and on behalf of the general public

7 | THE SUPERIOR COURT FOR THE STATE OF CALIFORNIA

8 | FOR THE COUNTY OF RIVERSIDE **RIC1903312**

9 | MATTHEW D. GREENE, an individual, on | Case No.
behalf of himself, the proposed class(es), all others |
10 | similarly situated, and on behalf of the general | **CLASS ACTION**
public |
11 | | **COMPLAINT FOR:**
Plaintiff, |
12 | | **1.   FALSE ADVERTISING**
v. | **(BUSINESS & PROFESSIONS CODE**
13 | | **§§ 17500 et seq.)**
HARLEY-DAVIDSON, INC., a Wisconsin |
14 | corporation; HARLEY-DAVIDSON MOTOR | **2.   VIOLATIONS OF CONSUMER**
COMPANY, INC., a Wisconsin corporation; | **LEGAL REMEDIES ACT (CIVIL**
15 | HARLEY-DAVIDSON MOTOR COMPANY | **CODE §§ 1770 et seq.)**
OPERATIONS, INC., a Wisconsin corporation; |
16 | and DOES 1 through 10, inclusive, | **3.   BREACH OF EXPRESS**
| **WARRANTY (CALIFORNIA**
17 | Defendants. | **COMMERCIAL CODE § 2313(1)(A))**
18 | | **4.   NEGLIGENT**
| **MISREPRESENTATION (CIVIL**
19 | | **CODE §§ 1572, 1709, AND 1710)**
20 | | **5.   FRAUD AND DECEIT (CIVIL**
| **CODE §§ 1572, 1709, AND 1710)**
21 | | **6.   QUASI-CONTRACT/UNJUST**
| **ENRICHMENT**
22 | | **7.   AIDING AND ABETTING**
23 | | **8.   UNFAIR COMPETITION**
| **(BUSINESS & PROFESSIONS CODE**
| **§§ 17200 et seq.)**

24

25 | Plaintiff MATTHEW D. GREENE ("Plaintiff" or "Greene"), on behalf of himself, the

26 | proposed class(es), all others similarly situated, and on behalf of the general public, hereby

27 | complains and alleges as follows against Defendants HARLEY-DAVIDSON, INC. ("HDI"),

28 | HARLEY-DAVIDSON MOTOR COMPANY, INC. ("HDMCI"), HARLEY-DAVIDSON

- 1 -
COMPLAINT

1   MOTOR COMPANY OPERATIONS, INC. "HDMCOI"); and DOES 1 through 10, inclusive,

2   (collectively, "HARLEY-DAVIDSON" or "Defendants"), based upon Plaintiff's own personal

3   knowledge and/or the investigation and discovery of his counsel:

4        1.    This is a class action pursuant to C.C.P. § 382 on behalf of Plaintiff MATTHEW

5   GREENE and other consumers like him who have been damaged and harmed by the false

6   advertising and unfair competition of Defendants.

7        2.    Plaintiff brings this proposed class action to complain about the false advertising

8   and unfair competition of Defendants arising out of the advertising and sale of new motorcycles.

9        3.    Plaintiff seeks appropriate relief for himself and the class(es) as defined herein,

10   including but not limited to damages, restitution, injunctive relief, and any other further relief as

11   may be deemed appropriate by the court.

12                     **Parties**

13        4.    Plaintiff GREENE is an individual over 18 years of age and has at all relevant

14   times been a resident of the State of California, County of Riverside.

15        5.    Defendant HDMCI is a U.S.-based motorcycle manufacturer and/or distributor that

16   produces and/or distributes heavyweight motorcycles, as well as motorcycle parts, accessories and

17   general merchandise.  At all relevant times, HDMCI is and was a Wisconsin corporation doing

18   business in San Diego County, and elsewhere, is and was a vehicle manufacturer and/or distributor

19   under California Vehicle Code §§ 672 and/or 296, and is and was required to be licensed as a

20   manufacturer and/or distributor by the State of California under Vehicle Code §§ 11700 and/or

21   11701.

22        6.    Defendant HDMCOI is a U.S.-based motorcycle manufacturer and/or distributor

23   that produces and/or distributes heavyweight motorcycles, as well as motorcycle parts, accessories

24   and general merchandise.  At all relevant times, HDMCOI is and was a Wisconsin corporation

25   doing business in San Diego County, and elsewhere, is and was a vehicle manufacturer and/or

26   distributor under California Vehicle Code §§ 672 and/or 296, and is and was required to be

27   licensed as a manufacturer and/or distributor by the State of California under Vehicle Code

28   §§ 11700 and/or 11701.

1        7.      Defendant HDI is the parent company for Defendants HDMCI and HDMCOI,

2   among others, and is publicly traded on the New York Stock Exchange under the trading name

3   "HOG."  At all relevant times, HDI is and was a Wisconsin corporation doing business in San

4   Diego County, and elsewhere.  Defendants HDMCI, HDMCOI, and/or HDI were/are vehicle

5   manufacturers and/or distributors under California Vehicle Code §§ 672 and/or 296, and were/are

6   required to be licensed as vehicle manufacturers and/or distributors by the State of California

7   under Vehicle Code §§ 11700 and/or 11701.

8        8.      Defendants HDMCI, HDMCOI, and/or HDI were/are responsible in some measure

9   for the advertising, promotion, acts, conduct, practices, and/or omissions that Plaintiff alleges

10  herein were unlawful, false, untrue, fraudulent, and/or misleading.

11       9.      HARLEY-DAVIDSON is a "franchisor(s)" of numerous motorcycle dealership

12  and/or franchisees located in California and elsewhere, as defined by California Vehicle Code

13  §§ 331, 331.1, and 331.2.

14       10.     Plaintiff is unaware of the true names, identities or capacities, whether individual,

15  corporate, association, or otherwise, of those Defendants sued herein as DOES 1 through 10,

16  inclusive.  Plaintiff therefore sues said Defendants by such fictitious names.  Plaintiff will seek

17  leave to amend this Complaint pursuant to California Code of Civil Procedure § 474 to set forth

18  the true names and capacities of these Defendants once they are ascertained.

19       11.     Plaintiff is informed and believes and on that basis alleges that Defendants sued

20  herein as DOES 1 through 10, inclusive, and each of them, are in some way responsible for the

21  acts and events complained of herein, and proximately caused the injuries and damages to Plaintiff

22  which are described in this Complaint.  Plaintiff will seek leave of court to amend this Complaint

23  to more specifically set forth the wrongful conduct of those Defendants when ascertained.

24       12.     Plaintiff is informed and believes, and thereon alleges, that each of said Defendants

25  is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions,

26  occurrences, and transactions alleged herein.

27

28

**Jurisdiction and Venue**

13.  HARLEY-DAVIDSON regularly conducts business in the State of California by, among other things, routinely advertising and selling new motorcycles in the State of California, through and by its/their licensed dealers.  As such, HARLEY-DAVIDSON has purposefully availed itself of the privilege of doing business in the State of California, by advertising and selling new motorcycles to California consumers, through and by its/their licensed dealers. HARLEY-DAVIDSON (except Defendant HDMCOI) is registered to do business with the California Secretary of State's Office.  HARLEY-DAVIDSON has substantial, continuous, and systematic contacts with the State of California such that the assertion of jurisdiction by California does not offend traditional notions of fair play and substantial justice.  As a condition of doing business in California, and by continually, routinely, and systematically placing its new motorcycles into the California stream of commerce, and directing its activities towards California consumers, HARLEY-DAVIDSON has agreed to be bound and governed by California law with respect to conduct that affects California consumers.  Indeed, HARLEY-DAVIDSON ships thousands and thousands of new motorcycles to the State of California each year, to be sold by and through their licensed dealers.  Accordingly, the assertion of personal jurisdiction over HARLEY-DAVIDSON by California courts would be consistent with notions of due process under the Fifth and Fourteenth Amendments to the United States Constitution.

14.  Venue is proper in this Court pursuant to California Code of Civil Procedure §§ 395 and 395.5 because Defendants conduct business in this County.  Additionally, the acts and transactions that are the subject of this complaint took place within this County.

15  The damages sought by Plaintiff and the proposed Class(es) exceed the minimal jurisdictional limits of the Superior Court and will be established according to proof at trial.

**The Representative Transaction**

16.  In or around 2015, Plaintiff was interested in buying a new Harley-Davidson motorcycle. Before making his purchase, Plaintiff researched the features, specifications, and pricing of particular Harley-Davidson motorcycles in which he was interested, including by reviewing and relying on the accuracy of the statements, representations, and advertising on/in

1   HARLEY-DAVIDSON's website (www.harley-davidson.com) and its various catalogs,

2   brochures, and motorcycle price hang tags attached to new motorcycles at TMCSF, Inc. dba

3   Riverside Harley-Davidson ("RHD"), a HARLEY-DAVIDSON dealership he visited.

4        17.    In reference to pricing, all of HARLEY-DAVIDSON's advertising that Plaintiff

5   saw and relied upon stated, represented, and/or affirmed that HARLEY-DAVIDSON's

6   manufacturer suggested retail prices ("MSRP") "exclude dealer setup, taxes, title and licensing

7   and are subject to change." As such, Plaintiff reasonably anticipated that he should expect any

8   HARLEY-DAVIDSON dealer from whom he might purchase a motorcycle to impose and/or

9   collect from him a "dealer setup" charge.

10       18.    On or about June 13, 2015, Plaintiff went to RHD with the goal of buying a new

11  motorcycle. Consistent with HARLEY-DAVIDSON's advertising statements, representations,

12  and/or affirmations on/in HARLEY-DAVIDSON's website (www.harley-davidson.com) and its

13  various catalogs and brochures, the new HARLEY-DAVIDSON motorcycles displayed on the

14  sales floor at RHD had motorcycle price hang tags which prominently stated that prices did not

15  include freight and dealer preparation/setup.

16       19.    Although Plaintiff did not know it at the time, and had no reasonable way of

17  determining it, HARLEY-DAVIDSON actually compensated and/or reimbursed RHD (and its

18  other authorized dealers) for performing "dealer setup," according to detailed and explicit dealer

19  preparation instructions, which meant that HARLEY-DAVIDSON's advertised MSRP prices

20  actually *included* "dealer setup" (but did not so state), and therefore that its advertising statements,

21  representations, and/or affirmations to the contrary were false and misleading. Such dealer

22  preparation and delivery instructions, and reasonable compensation amounts to dealers for

23  performing manufacturer-specified preparation and delivery are required by California Vehicle

24  Code § 3064(a), which also requires vehicle manufacturers to file with respective "schedules of

25  compensation" with the California New Motor Vehicle Board.

26       20.    On or about June 13, 2015, Plaintiff purchased a new Harley-Davidson motorcycle

27  (2015 FLHX bearing VIN 1HD1KBM38FB679929) from RHD for a total purchase price of

28  $23,799.63, including all costs, fees, and charges but excluding interest. The total purchase price

1   of $23,799.63 that Plaintiff paid included, as a component part, a combined charge (or surcharge)

2   of $1,399 for freight and "prep" (stated on the motorcycle purchase agreement and retail

3   installment sales contract as "freight/handling").  This amount of $1,399 was also stated on the

4   motorcycle price hang tag attached to the motorcycle on display at RHD as being "excluded" from

5   the total retail price as reflected on the bottom of RHD's price hang tag.  Stated differently, the

6   hang tag did not include $1,399 as one of the price components in stating a sum total retail price,

7   but the hang tag's language indicated it *would be added* to the retail price as part of closing the

8   retail transaction.  Indeed, $1,399 *was* added to the retail price (included within the sum of

9   $23,799.63 that Plaintiff paid); however, due to HARLEY-DAVIDSON's advertising statements,

10  representations, and/or affirmations that "dealer setup" was "excluded" from HARLEY-

11  DAVIDSON's MSRP pricing, as alleged herein, Plaintiff did not see any cause for concern about

12  such a charge.

13          21.     Through subsequent discovery and investigation of counsel, it has since been

14  determined that, of the $1,399 for freight and "prep," the amount of $964 was charged for dealer

15  "prep" and $435 was charged for freight.

16          22.     RHD, however, had performed no additional and/or material "prep" or "setup"

17  tasks beyond those specified by HARLEY-DAVIDSON in the preparation and delivery

18  instructions issued to RHD (and other HARLEY-DAVIDSON dealers), for which HARLEY-

19  DAVIDSON compensated and/or reimbursed RHD (and other HARLEY-DAVIDSON dealers).

20          23.     Plaintiff was induced by HARLEY-DAVIDSON's false and misleading statements,

21  representations, and/or affirmations, and misrepresentations, to pay RHD's charge of $1,399 for

22  freight and "prep," which explained and/or justified to consumers that the imposition of a "prep"

23  or "setup" charge (or surcharge) by a HARLEY-DAVIDSON dealer was reasonable, appropriate,

24  and should be anticipated/expected.

25          24.     On or about August 23, 2017, more than two years *after* Plaintiff's purchase,

26  HARLEY-DAVIDSON began disclosing in the advertising statements, representations, and/or

27  affirmations of its website and catalogs that "Harley-Davidson reimburses dealers for performing

28  manufacturer-specified pre-delivery inspection and setup tasks." But this disclosure came far too

1    late for Plaintiff, who had no idea that "Harley-Davidson reimburse[d] dealers for performing

2    manufacturer-specified pre-delivery inspection and setup tasks."

3         25.     Had Plaintiff known this when he purchased his motorcycle on or about June 13,

4    2015, he would not have agreed to pay RHD a dealer "setup" or "prep" charge. Yet, Plaintiff paid

5    RHD's charge (or surcharge) of $1,399 for freight and "prep" in reliance on HARLEY-

6    DAVIDSON's false statements, representations, and/or affirmations that "dealer setup" was not

7    included in HARLEY-DAVIDSON's MSRP.

8                         **Tolling Allegations**

9         26.     Plaintiff Greene alleges herein that any applicable statutes of limitation should be

10    and are tolled under governing law. In support of applicable tolling principles, Plaintiff alleges:

11         27.     On or about December 30, 2015, Plaintiff Isaiah Gomez filed an action in San

12    Diego Superior Court, captioned as *Gomez v. Mycles Cycles, Inc. dba San Diego Harley-Davidson*

13    *et al.*, Case No. 37-2015-00043311-CU-BT-CTL.

14         28.     On or about January 28, 2016, Plaintiff Gomez filed a first amended complaint

15    ("FAC"), which included HDI and HDMCI as defendants. The *Gomez* FAC also alleged that HDI

16    and HDMCI had made false and misleading statements, representations, and/or affirmations about

17    "dealer preparation" charges, and sought injunctive relief only as against HDI and HDMCI.

18         29.     On or about February 24, 2017, Plaintiff Gomez filed a second amended complaint

19    ("SAC"), which added HDMCOI and sought class action status against HARLEY-DAVIDSON

20    (including HDI, HDMCI, and HDMCOI) for its/their false and misleading advertising and

21    representations about "dealer preparation" charges. Plaintiff Greene was a member of the putative

22    class of California purchasers, based on the putative class definition of Plaintiff Gomez's SAC

23    and/or Plaintiff Gomez's motion for class certification, filed on or about April 20, 2018.

24         30.     In his motion for class certification filed on or about April 20, 2018, Plaintiff

25    Gomez moved to certify the following class, with Plaintiff Gomez as the proposed class

26    representative: "All consumers who, for the period beginning January 28, 2012 through the date

27    of final class notice and/or trial purchased or leased a new, assembled motorcycle in the State of

28

1  California from an authorized dealer/franchisee of HARLEY-DAVIDSON." Plaintiff Greene was

2  and is a member of the putative class as proposed therein.

3      31.    On or about August 10, 2018, the Court in *v. Mycles Cycles, Inc. dba San Diego*

4  *Harley-Davidson et al.*, Case No. 37-2015-00043311-CU-BT-CTL, the Honorable Gregory W

5  Pollack presiding, granted in part and denied in part Plaintiff Gomez's motion for class

6  certification. The portion of the August 10, 2018 order *denying* California-wide certification of

7  the proposed class was based on HARLEY-DAVIDSON's false and misleading advertising

8  statements, representations, and/or affirmations about "dealer preparation" charges. In its written

9  order of August 10, 2018, the Court theorized that such allegations were not manageable on a

10  *statewide* basis, due to fact that more than 85,000 purchase transactions and more than 50

11  dealerships would be implicated by a certification based on such allegations.

12      32.    Notice of the partial denial and partial grant of certification has not yet been issued

13  in the *Gomez* action. Unless he chooses to exclude himself from that portion of the *Gomez* class

14  that has been certified, Plaintiff Greene is and will a member of the certified class in the *Gomez*

15  action. However, his claims as asserted herein are not based on the theory certified by the *Gomez*

16  order of August 10, 2018. Should he choose to opt out of the *Gomez* action, however, or should

17  the *Gomez* action be decertified in whole or in part in a manner that excludes Plaintiff Greene, he

18  reserves his right to seek amendment of this complaint to include such allegations.

19      33.    Accordingly, Plaintiff Greene will and hereby does limit his putative class to

20  consumers who made purchases *exclusively* from Riverside Harley-Davidson, and *only* during the

21  period June 11, 2015 through August 22, 2017.

22      34.    Given that Plaintiff Greene was a member of the putative class in an action that was

23  originally filed against HDI and HDMCI on or about January 28, 2016, when Plaintiff Gomez

24  filed his FAC, and that Plaintiff Gomez's motion for class certification was denied as to the

25  "setup" allegations on or about August 10, 2018, the period from January 28, 2016 through

26  August 10, 2018 (925 days) should be *excluded* under governing principles from the running of

27  any statutes of limitation against HDI and/or HDMCI. Stated differently, any statutes of limitation

28

1  should be tolled (*i.e.*, not counted against the applicable statutes of limitation) for the period from

2  January 28, 2016 through August 10, 2018, which is 925 days).

3      35.    Alternatively, given that Plaintiff Greene was a member of the putative class in the

4  proposed class action SAC that was filed against HDI, HDMCI, and HDMCOI on or about

5  February 24, 2017 and that Plaintiff Gomez's motion for class certification was denied as to the

6  "setup" allegations on or about August 10, 2018, the period from February 24, 2017 through

7  August 10, 2018 (532 days) should be *excluded* under governing principles from the running of

8  any statutes of limitation against HDI, HDMCI, and/or HDMCOI.  Stated differently, and as an

9  alternative to January 28, 2016, any statutes of limitation should be tolled (*i.e.*, not counted against

10  the applicable statutes of limitation) for the period from February 24, 2017 through August 10,

11  2018, which is 532 days).

12                          **Class Allegations**

13      36.    Pursuant to California Code of Civil Procedure § 382, Plaintiff brings this action on

14  behalf of himself and all other persons similarly situated.  Plaintiff brings this action in a

15  representative capacity to remedy the acts and omissions of HARLEY-DAVIDSON, and to seek

16  redress on behalf of those persons who have been affected thereby.

17      37.    Plaintiff is unable to state the precise number of potential members of the proposed

18  class because that information is in the possession of the HARLEY-DAVIDSON and/or RHD.

19  The proposed class, however, likely consists of thousands of members, and is so numerous that

20  joinder of all members would be impracticable.  The exact size of the proposed class(es), and the

21  identity of the members thereof, will or should be readily ascertainable from the business records

22  of HARLEY-DAVIDSON.

23      38.    Plaintiff proposes a Class Definition as follows: "All consumers who, for the period

24  beginning June 11, 2015 through August 22, 2017, purchased or leased from Riverside Harley-

25  Davidson a new, assembled Harley-Davidson motorcycle."

26      39.    The Class Definition is subject to such further refinement, limitations, revisions,

27  and/or exclusions as may be ordered by the Court.  Plaintiff reserves the right to amend or revise

28  the Class Definition.

40.     There is a community of interest among the members of the proposed classes in that there are questions of law and fact common to the proposed classes that predominate over questions affecting only individual members.

41.     The common questions of law and fact which predominate as to all class members include, among others:

(a)     Whether the advertising statements, representations, and/or affirmations of HARLEY-DAVIDSON to the effect that its motorcycle prices "exclude dealer set-up," despite the requirements of Vehicle Code § 3064 that HARLEY-DAVIDSON compensate and/or reimburse dealers/franchisees for such work, and despite the fact that HARLEY-DAVIDSON actually compensated and/or reimbursed RHD (and its other dealers/franchisees) for performing such work, breached express warranties under California Commercial Code §§ 2313(1)(A), or otherwise;

(b)     Whether the advertising statements, representations, and/or affirmations of HARLEY-DAVIDSON to the effect that its motorcycle prices "exclude dealer set-up," despite the requirements of Vehicle Code § 3064 that HARLEY-DAVIDSON compensate and/or reimburse dealers/franchisees for such work, and despite the fact that HARLEY-DAVIDSON actually compensated and/or reimbursed RHD (and its other dealers/franchisees )for performing such work, were false, misleading, and/or deceptive under the unfair competition law of California Business and Professions Code §§ 17200 *et seq.* ("UCL"), the false advertising law of California Business and Professions Code §§ 17500 *et seq.* ("FAL"), California's Consumer Legal Remedies Act as contained in Civil Code §§ 1770 *et seq.* ("CLRA"), Vehicle Code § 11713(a), and/or Civil Code §§ 1572, 1573, and/or 1710;

(c)     Whether HARLEY-DAVIDSON defrauded and/or made negligent misrepresentations to consumers, in violation of Civil Code §§ 1572, 1573, and/or 1710, through statements in its advertising that motorcycle prices "exclude dealer set-up," despite the requirements of Vehicle Code § 3064 that HARLEY-DAVIDSON compensate and/or

reimburse dealers/franchisees for such work, and despite the fact that HARLEY-DAVIDSON actually compensated and/or reimbursed dealers/franchisees for such work;

(d)     Whether HARLEY-DAVIDSON violated Vehicle Code § 11713(a) by making and/or disseminating untrue or misleading statements, or statements as part of a plan or scheme with the intent not to sell its motorcycles at prices stated in HARLEY-DAVIDSON's advertising and/or as so advertised;

(e)     Whether HARLEY-DAVIDSON aided and abetted, or substantially assisted, RHD in violating Vehicle Code § 11713(a) in selling, offering for sale, or displaying new, assembled motorcycles using false and/or misleading advertising statements, representations, and/or affirmations;

(f)     Whether consumers were damaged by HARLEY-DAVIDSON's fraudulent, unlawful, and/or misleading acts and/or omissions;

(g)     Whether HARLEY-DAVIDSON violated the UCL, FAL, and/or CLRA;

(h)     Whether HARLEY-DAVIDSON aided and abetted, or substantially assisted, Defendant RHD in imposing extra fees and charges on consumers for delivery and preparation services for which RHD had been or was compensated and/or reimbursed by HARLEY-DAVIDSON, in violation of 13 C.C.R. § 262.03, and, if so, whether such acts and practices violated the UCL, the FAL, and/or the CLRA;

(i)     Whether HARLEY-DAVIDSON violated Civil Code Civil Code § 1770(a), subsections (5), (9), (13), (14), and/or (16), by: (1) representing that goods sold by them had certain characteristics which they did not have [Civil Code § 1770(a)(5)]; (2) advertising goods with intent not to sell them as advertised [Civil Code § 1770(a)(9)]; (3) making false or misleading statements of fact concerning reasons for or amounts of price reductions [Civil Code § 1770(a)(13)]; (4) representing that sales transactions involved obligations which they did not have [Civil Code § 1770(a)(14)]; and/or (5) representing that the subject(s) of a transaction(s) has been supplied in accordance with a previous representation when it has not to perform such work) [Civil Code § 1770(a)(16)]; and

(j)      Whether HARLEY-DAVIDSON was obligated to disclose and/or failed to disclose to putative class members that HARLEY-DAVIDSON's advertised prices actually included dealer setup and/or that HARLEY-DAVIDSON compensated and/or reimbursed RHD for "performing manufacturer-specified pre-delivery inspection and setup tasks."

42.    The names and addresses of all Class members entitled to damages, restitution, and/or monetary recovery are or should be readily ascertainable from the records of HARLEY-DAVIDSON and can be obtained in discovery.

43.    Proof of a common set of facts will establish the liability of HARLEY-DAVIDSON, and the right of each member of the class to recover.

44.    The claims asserted by Plaintiff will be governed by the laws of the State of California and the injuries resulting from Defendants' conduct were incurred in California.  As a result, there are no variations in state laws that would preclude maintenance as a class action.

45.    Plaintiff's claims are typical of those of the classes he seeks to represent, and he will fairly and adequately represent the interests of the class.  Plaintiff is represented by counsel competent and experienced in both consumer and class action litigation.

46.    A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impracticable and economically unfeasible for class members to seek redress individually.  The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent adjudications with respect to individual class members against HARLEY-DAVIDSON, or any of them, and would establish incompatible standards of conduct.

### First Cause of Action

### False Advertising

### (Against HARLEY-DAVIDSON)

47.    Plaintiff incorporates by reference the preceding paragraphs hereof as though set forth in full herein.

48.     California Business & Professions Code §§ 17500 *et seq.*, the FAL, prohibits the sale or disposition of real or personal property, or services, through any advertising method containing false, untrue, or misleading statements of fact, or through advertising without the intent to sell the property or services at the price stated or as advertised.

49.     Plaintiff has standing to bring this claim because he has lost money or property as a result of the misconduct alleged and he can maintain a class pursuant to the laws in the State of California.

50.     HARLEY-DAVIDSON, with the intent to induce members of the public to enter into transactions for the purchase of goods, have committed acts of untrue, false, and/or misleading advertising, as defined by Business & Professions Code § 17500, by publicly advertising goods with intent not to sell such goods at the price stated or as advertised.

51.     The acts and practices of HARLEY-DAVIDSON are likely to mislead the general public and, consequently, constitute false advertising within the meaning of the FAL.

52.     These aforementioned acts and practices by HARLEY-DAVIDSON constitute false advertising within the meaning of the FAL.

53.     The unlawful methods, acts, and practices of HARLEY-DAVIDSON have damaged other California consumers similarly situated.  Therefore, Plaintiff brings this action on behalf of not only himself, but all other consumers similarly situated to recover restitution and obtain other relief, as provided for by California law.

54.     Because the number of class members will be so numerous, it is impracticable to bring all of the members of the class before the Court.  Furthermore, questions of law and fact common to the classes, are substantially similar and predominate over questions affecting individual members.  The claims and defenses of the representative Plaintiff are typical of the claims and defenses of the classes, and the representative Plaintiff will fairly and adequately protect the interested of the classes.

55.     As a result of the aforementioned acts and practices, Plaintiff and other members of the Class(es) have lost money or property and suffered injury in fact, by paying false, deceptive,

misleading, and unfair charges, fees, costs, and expenses, based on the false and misleading advertising of Defendants.

### Second Cause of Action

### Violations of Consumer Legal Remedies Act

### (Against HARLEY-DAVIDSON)

56.     Plaintiff incorporates by reference the preceding paragraphs hereof as though set forth in full herein.

57.     The CLRA, Civil Code §§ 1750 *et seq.*, was designed and enacted to protect consumers from unfair and deceptive business practices.

58.     Plaintiff was a "consumer" within the meaning of the CLRA, Civil Code § 1761(d), and his transaction involved the sale of goods, and was therefore covered by the CLRA. HARLEY-DAVIDSON's practices are part of a "transaction" covered by the CLRA, as that term is defined in Civil Code § 1761(e).

59.     As alleged herein, HARLEY-DAVIDSON violated Civil Code Civil Code § 1770(a), subsections (5), (9), (13), (14), and/or (16), by: (1) representing that goods sold by them had certain characteristics which they did not have [Civil Code § 1770(a)(5)]; (2) advertising goods with intent not to sell them as advertised [Civil Code § 1770(a)(9)]; (3) making false or misleading statements of fact concerning reasons for or amounts of price reductions [Civil Code § 1770(a)(13)]; (4) representing that sales transactions involved obligations which they did not have [Civil Code § 1770(a)(14)]; and/or (5) representing that the subject(s) of a transaction(s) has been supplied in accordance with a previous representation when it has not to perform such work) [Civil Code § 1770(a)(16)];

60.     Due to the acts and omissions of HARLEY-DAVIDSON, Plaintiff and other members of the Class(es) have suffered actual damages that exceed the jurisdictional minimum of the Superior Court.

61.     On or about March 2, 2017, Plaintiff provided a statutory notice under Civil Code § 1782(a), by demanding that HARLEY-DAVIDSON: (a) remedy the foregoing CLRA violations; (b) discontinue its/their unlawful, unfair, and fraudulent acts and conduct; and (c) provide

1  restitution to Class members.  HARLEY-DAVIDSON did not respond to Plaintiff's demand, and

2  has failed and/or refused to provide restitution and/or damages to Plaintiff or any other member of

3  the putative Class.

4        62.    Pursuant to the provisions of Civil Code § 1780(a)(2) and 1782(d), Plaintiff is

5  entitled to relief that the Court deems proper under the circumstances, including but not limited to

6  entry of an order providing restitution and/or damages to Plaintiff or other members of the putative

7  Class.  Furthermore, as a legal result of HARLEY-DAVIDSON's misconduct, as alleged herein,

8  and in an effort to protect consumer rights, Plaintiff is entitled to an award of attorneys' fees and

9  costs pursuant to Civil Code § 1780(e).

10                          **Third Cause of Action**

11                          **Breach of Express Warranty**

12                    **(California Commercial Code § 2313(1)(A))**

13                          **(Against HARLEY-DAVIDSON)**

14        63.    Plaintiff incorporates by reference the preceding paragraphs hereof as though set

15  forth in full herein.

16        64.    As alleged herein, and as construed under California Commercial Code §

17  2313(1)(A), HARLEY-DAVIDSON expressly "warranted" through false affirmations of fact

18  and/or promises, or descriptions of the goods, that new motorcycle "set-up" was "excluded" from

19  their prices, even though – unbeknownst to Plaintiff – HARLEY-DAVIDSON compensated

20  and/or reimbursed RHD (and all its other franchisees/dealers) to perform all necessary and

21  appropriate "set-up" work.  As such, far from being "excluded" from their prices, "set-up" was

22  actually included, by reason of the compensation provided by HARLEY-DAVIDSON to perform

23  such tasks.

24        65.    During the period June 11, 2015 through August 23, 2017, such statements by

25  HARLEY-DAVIDSON, which were made consistently and uniformly to all consumers,

26  constituted affirmations of fact or promises, or a description of the goods being sold, within the

27  meaning of California Commercial Code § 2313(1)(A).

28

66.     Plaintiff, and other members of the proposed Class(es), were exposed to such advertising statements.  Such statements were part of the basis of the bargain.

67.     In light of the falsity of the affirmations of fact and/or promises, and/or the false description of the goods, HARLEY-DAVIDSON breached its/their respective warranties.

68.     Plaintiff, and other members of the proposed Class(es), were harmed, and such breaches of warranty by HARLEY-DAVIDSON were substantial factors causing harm to Plaintiff and other members of the proposed Class(es).

**Fourth Cause of Action**

**Negligent Misrepresentation**

**(California Civil Code §§ 1572, 1709, and/or 1710)**

**(Against HARLEY-DAVIDSON)**

69.     Plaintiff incorporates by reference the preceding paragraphs hereof as though set forth in full herein.

70.     By affirmatively stating and representing that motorcycle "set-up" was "excluded" from their prices, even though – unbeknownst to Plaintiff – HARLEY-DAVIDSON compensated and/or reimbursed RHD (and all its other franchisees/dealers) to perform all necessary and appropriate "set-up" work, HARLEY-DAVIDSON misrepresented past or existing material facts.

71.     HARLEY-DAVIDSON knew that it actually compensated and/or reimbursed RHD (and all its other franchisees/dealers) to perform all necessary and appropriate "set-up" work.  As such, far from being "excluded" from their prices, "set-up" was actually included, by reason of the compensation provided by HARLEY-DAVIDSON to perform such tasks.  In light of such knowledge by HARLEY-DAVIDSON, the affirmative representations made uniformly and consistently to all consumers during the period June 11, 2015 through August 23, 2017 to the effect that prices "exclude set-up" was made without reasonable ground for believing such statements to be true.

72.     HARLEY-DAVIDSON intended consumers to rely on such misrepresented facts and representations, which were customarily prefaced with the following language in bold and all capital letters: "IMPORTANT – PLEASE READ." In this respect, HARLEY-DAVIDSON

1  sought to affirmatively convey such "important" information to consumers, and induce reliance
2  thereon.

3         73.    In light of the collective efforts of HARLEY-DAVIDSON to draw consumer
4  attention to such false, misleading, and negligent misrepresentations, and induce consumers to rely
5  on such statements, Plaintiff's reliance was justified.

6         74.    In reliance on such false, misleading, and negligent misrepresentations, Plaintiff,
7  and other members of the proposed Class(es), were damaged, by paying a phony "set-up" or
8  "prep" fee as alleged herein.

9         75.    Members of the Class(es) were similarly damaged.

10                              **Fifth Cause of Action**

11            **Intentional Misrepresentation -- Fraud and Deceit**

12              **(California Civil Code §§ 1572, 1709, and/or 1710)**

13                        **(Against HARLEY-DAVIDSON)**

14         76.    Plaintiff incorporates by reference the preceding paragraphs hereof as though set
15  forth in full herein.

16         77.    By affirmatively stating and representing that motorcycle "set-up" was "excluded"
17  from their prices, even though -- unbeknownst to Plaintiff -- HARLEY-DAVIDSON compensated
18  and/or reimbursed RHD (and all its other franchisees/dealers) to perform all necessary and
19  appropriate "set-up" work, HARLEY-DAVIDSON misrepresented past or existing material facts
20  and/or failed to disclose facts that, under the circumstances, should have been disclosed.

21         78.    The affirmative misrepresentations and/or failures to disclose such facts constitute
22  actionable fraud or deceit within the meaning of California Civil Code §§ 1572, 1709, and/or 1710
23  because:  (a) as between Plaintiff (and the putative Class) and HARLEY-DAVIDSON, HARLEY-
24  DAVIDSON had exclusive knowledge of such material facts, which were not known or
25  reasonably accessible to Plaintiff; (b) HARLEY-DAVIDSON actively concealed such material
26  facts from Plaintiff and the putative Class; and/or (c) HARLEY-DAVIDSON made partial
27  representations that were misleading because other material facts were not disclosed.

28

79. By reason of its/their "partial" disclosures (or "half-truths") on the subjects of MSRP and "set-up," HARLEY-DAVIDSON owed to consumers a duty of full and truthful disclosure of all related facts (which it failed to make), including the fact that HARLEY-DAVIDSON actually compensated and/or reimbursed RHD (and all its other franchisees/dealers) to perform all necessary and appropriate "set-up" work. Such disclosures were necessary to ensure that the statements they did make were not misleading. Yet, HARLEY-DAVIDSON did not make such disclosures to Plaintiff or other consumers until August 23, 2017.

80. HARLEY-DAVIDSON knew that it actually compensated and/or reimbursed RHD (and all its other franchisees/dealers) to perform all necessary and appropriate "set-up" work. As such, far from being "excluded" from their prices, "set-up" was actually included, by reason of the compensation provided by HARLEY-DAVIDSON to perform such tasks. In light of such knowledge by HARLEY-DAVIDSON, the affirmative representations made uniformly and consistently to all consumers during the period June 11, 2015 through August 23, 2017 to the effect that prices "exclude set-up" was made knowing such statements were actually false.

81. HARLEY-DAVIDSON and intended consumers to rely on such misrepresented facts and representations, which were customarily prefaced with the following language in bold and all capital letters: "IMPORTANT – PLEASE READ." As such, HARLEY-DAVIDSON sought to affirmatively convey such "important" information to consumers, and induce reliance thereon.

82. In light of the efforts of HARLEY-DAVIDSON to draw consumer attention to such false, misleading, and intentional misrepresentations, and induce consumers to rely on such statements, Plaintiff's reliance was justified.

83. In reliance on such false, misleading, and negligent misrepresentations, Plaintiff, and other members of the proposed Class(es), were damaged, by paying a phony "set-up" or "prep" fee(s) on alleged herein.

84. Members of the Class(es) were similarly damaged.

<u>**Sixth Cause of Action**</u>

<u>**Quasi Contract/Unjust Enrichment**</u>

**(Against HARLEY-DAVIDSON)**

85.    Plaintiff incorporates by reference the preceding paragraphs hereof as though set forth in full herein.

86.    As alleged herein, Plaintiff was enticed and induced to pay a "set-up" or "prep" fee through false and misleading labeling, and through affirmative misrepresentations and disclosure failures of HARLEY-DAVIDSON.

87.    As a result, HARLEY-DAVIDSON was unjustly enriched, and Plaintiff is entitled to relief under a theory of quasi-contract, assumpsit, and/or unjust enrichment, which is an equitable contract implied by law for reasons of justice.

88.    HARLEY-DAVIDSON was unjustly enriched because, by publishing advertising statements indicating, suggesting, and/or inferring that *consumers* should pay dealers for any associated "set-up" costs, HARLEY-DAVIDSON *avoided* paying additional set-up fees (*i.e.*, a saved expenditure) directly to RHD.  HARLEY-DAVIDSON's saved expenditure would be unjust, as it would foist a burden on Plaintiff and other members of the class that is properly borne by HARLEY-DAVIDSON, as contemplated and required by Vehicle Code § 3064(a).

89.    Under Vehicle Code § 3064(a), the entire obligation of compensating and/or reimbursing dealers/franchisees for performing the preparation and delivery obligations of vehicle manufacturers is designed to be borne by the manufacturer, not the dealer/franchisee and certainly not the consumer.  Thus, the obligation to make reimbursement to Plaintiff and other members of the Class(es) is imposed because good conscience dictates that under the circumstances the person benefited (i.e., HARLEY-DAVIDSON) should make reimbursement.

90.    Moreover, HARLEY-DAVIDSON's saved expenditure also resulted in RHD being fully and/or partially compensated and/or reimbursed *twice* for the same work, once (at least partially) by HARLEY-DAVIDSON and once again by Plaintiff and other members of the Class(es).

91.   From HARLEY-DAVIDSON, Plaintiff on his own behalf and on behalf of the proposed Class(es) seeks restitution/disgorgement of all such "set-up" and/or "prep" fees that HARLEY-DAVIDSON retained and/or avoiding paying to RHD (calculated based on the amounts of "setup" and/or "prep" fees that Plaintiff and other consumers paid to RHD), plus interest, costs of suit, and other fees and costs as may be allowable.

<u>Seventh Cause of Action</u>

<u>Common Law and Statutory Aiding and Abetting</u>

<u>(Common Law and/or California Vehicle Code § 11700.3)</u>

(Against HARLEY-DAVIDSON)

92.   Plaintiff incorporates by reference the preceding paragraphs hereof as though set forth in full herein.

93.   Under common law, liability may be imposed on one who aids and abets the commission of an intentional tort or violation of law if the person: (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act; or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

94.   California Vehicle Code § 11700.3 also prohibits aiding and abetting particular violations of the Vehicle Code, stating: "No person may aid and abet a person in the performance of any act in violation of this chapter."

95.   Relevant here, HARLEY-DAVIDSON knew (or must have known) that the conduct of RHD in imposing and/or collecting "setup" fees and/or charges constituted a breach of duty and gave substantial assistance or encouragement to the other to so act.  Specifically:

96.   HARLEY-DAVIDSON knew or must have known that:

a.   Vehicle Code § 3064(a) requires that manufacturers (franchisors), which in this case is HARLEY-DAVIDSON, to specify to dealers (franchisees), which in this case is RHD (and/or its other authorized California dealerships/franchisees), its vehicle delivery and preparation obligations before the delivery of the new vehicle to a retail buyer;

b.      Vehicle Code § 3064(a) requires that manufacturers (franchisors), which in this case is HARLEY-DAVIDSON, reasonably compensate dealers (franchisees), which in this case is RHD (and/or its other authorized California dealerships/franchisees), for performing their vehicle delivery and preparation obligations before the delivery of the new vehicle to a retail buyer;

c.      HARLEY-DAVIDSON's General Conditions required RHD (and/or all its other authorized California dealerships/franchisees), under Section F.2, to perform the necessary and appropriate "PDI" work, saying: "PRE-DELIVERY OBLIGATIONS. Dealer agrees to uncrate, set up, inspect and test each new Harley-Davidson Motorcycle before the delivery to Dealer's customer, in accordance with Seller's [Harley-Davidson Motor Company] written instructions."

d.      HARLEY-DAVIDSON provided explicit, detailed and comprehensive delivery and preparation obligations for new Harley-Davidson motorcycles to RHD (and/or its other authorized California dealerships/franchisees);

e.      HARLEY-DAVIDSON's PDI instructions specify and include all of the work that is necessary and appropriate so that – as referenced in Section F.2 of its "General Conditions of Sales and Service" – the customer receives a Harley-Davidson Motorcycle that is "fully set up by a qualified Dealer technician and in satisfactory, lawful and safe operating condition;"

f.      HARLEY-DAVIDSON PDI instructions are in fact so detailed that no further preparation or delivery work is required or contemplated by HARLEY-DAVIDSON before delivery to the customer, except to the extent "dealer-added" accessories or options may be installed;

g.      HARLEY-DAVIDSON actually compensated and/or reimbursed RHD (and/or its other authorized California dealerships/franchisees) for performing such PDI/"set-up" work according to a reasonable schedule of compensation; and

h.    13 C.C.R. § 262.03 expressly prohibits dealers/franchisees from imposing additional charges on consumers for delivery and preparation where they are or will be reimbursed or compensated by another party.

97.    Despite knowing such information, HARLEY-DAVIDSON substantially assisted and/or encouraged RHD in imposing, collecting, charging, and/or obtaining "set-up," "prep," and/or PDI fees from consumers, even where RHD had not done any work *over and above* that specified by HARLEY-DAVIDSON and/or had not explicitly itemized such work, as required by 13 C.C.R. § 262.03.  HARLEY-DAVIDSON substantial assistance and/or encouragement consisted of (at least) the following acts, actions, omissions, and/or practices:

a.  repeatedly stating and representing during the period June 11, 2015 through August 23, 2017 that its MSRP prices "exclude dealer setup";

b.  leading reasonable consumers to believe, through its advertising statements and misrepresentations, that dealers may charge consumers extra for "dealer setup," that such a charge should not be unexpected, and that such a charge is entirely legitimate;

c.  affirmatively requiring that its dealers use and include such "prices exclude dealer setup" language, too, whenever they publish, quote, and/or advertise prices for new Harley-Davidson motorcycles; and

d.  suppressing, concealing, and failing to disclose to consumers in its advertising or otherwise that:

    i.    its authorized dealers/franchises – including RHD and its other authorized dealers/franchisees – are actually compensated to perform all of the necessary and appropriate PDI so that the customer receives a Harley-Davidson Motorcycle that, as referenced in Section F.2 of its "General Conditions of Sales and Service," is "fully set up by a qualified Dealer technician and in satisfactory, lawful and safe operating condition;" and

    ii.    Vehicle Code § 3064(a) requires HARLEY-DAVIDSON as the manufacturer to reasonably compensate authorized dealers/franchisees for

1        performing their vehicle delivery and preparation obligations, and that compensates

2        them for doing so as required Vehicle Code § 3064(a).

3        98.    As alleged herein, the legitimacy of such "dealer set-up" charges is a complete

4    fallacy perpetuated by HARLEY-DAVIDSON and its authorized dealers/franchisees, and is

5    designed only to inflate and/or misrepresent that true cost of a new Harley-Davidson motorcycles

6    (through the imposition of a false, phony, fraudulent, unlawful, and misleading charge for "dealer

7    set-up" or "prep") at the expense of consumers.  In this fashion, consumers are induced to pay an

8    otherwise avoidable charge for "dealer set-up" or "prep."

9        99.    Thus, the scheme whereby HARLEY-DAVIDSON dealers, including RHD,

10   routinely and systematically collect false, fraudulent, deceptive, misleading and/or unfair PDI

11   charges from consumers can only be perpetrated because: (a) the dealers – including RHD and

12   others – never disclosed to consumers that they had been or would be reasonably compensated to

13   perform all necessary PDI work; and (b) HARLEY-DAVIDSON also suppressed, concealed,

14   and/or failed to disclose such information to consumers until August 23, 2017, and in fact falsely

15   and fraudulenting advised consumers that HARLEY-DAVIDSON's MSRP pricing did not include

16   PDI work, despite its knowledge that it obviously did.

17       100.   As an aider and abettor, HARLEY-DAVIDSON is equally liable for the torts and

18   violations of law committed by RHD, and should pay to Plaintiff and members of the Class

19   restitution, damages, interest, costs of suit, and other fees and expenses as allowable by law,

20   according to proof.

21                              **Eighth Cause of Action**

22                              **Unfair Competition**

23                              **(Against HARLEY-DAVIDSON)**

24       101.   Plaintiff incorporates by reference the preceding paragraphs hereof as though set

25   forth in full herein.

26       102.   California Business & Professions Code §§ 17200 *et seq*., the UCL, defines unfair

27   competition to include any unlawful, unfair, or fraudulent business act or practice, and prohibits

28   such conduct.

103.    Plaintiff has standing to bring this claim because he has lost money or property as a result of the misconduct alleged and he can maintain a class pursuant to the laws in the State of California.

104.    These acts and practices by HARLEY-DAVIDSON violate the UCL.

105.    The acts and practices of HARLEY-DAVIDSON are likely to mislead the general public and, consequently, constitute unfair competition within the meaning of the UCL.

106.    The unlawful methods, acts, and practices of HARLEY-DAVIDSON have caused damages to other California consumers similarly situated.  Therefore, Plaintiff brings this action on behalf of not only himself, but all other consumers similarly situated to recover restitution and obtain other relief, as provided for by California law.

107.    Because the number of class members will be so numerous, it is impracticable to bring all of the members of the class before the Court.  Furthermore, questions of law and fact common to the classes, are substantially similar and predominate over questions affecting individual members.  The claims and defenses of the representative Plaintiff are typical of the claims and defenses of the classes, and the representative Plaintiff will fairly and adequately protect the interested of the classes.

108.    As a result of the aforementioned acts and practices, Plaintiff and other members of the Class(es) have lost money or property and suffered injury in fact, by paying false, deceptive, misleading, and unfair charges, fees, costs, and expenses, based on the false and misleading advertising of Defendants.

**Prayer**

WHEREFORE, Plaintiff prays that judgment be entered against HARLEY-DAVIDSON as follows:

1.    For an Order certifying this action as a class action;

2.    For an Order declaring that the advertising, acts, practices and/or omissions of Defendants were/are false, fraudulent, unfair, unlawful, and/or misleading;

3.    For an award of restitution and/or damages to Plaintiff and the other members of the Class consisting of all funds paid by Class members as result of HARLEY-DAVIDSON's

1  false advertising and/or unfair competition, in an amount not less than $1,000,000 for each year

2  beginning June 11, 2015 and continuing to August 23, 2017, but in any case to be proven at trial;

3       4.     For entry of an injunction against HARLEY-DAVIDSON, enjoining them from the

4  unlawful acts alleged herein;

5       5.     For reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5, Civil

6  Code § 1780(e), or as otherwise allowed by law;

7       6.     On the Second and Fifth Causes of action only, for punitive and/or exemplary

8  damages, as allowed and/or provided under Civil Code §§ 1780(a) and/or 3294;

9       7.     For interest at the legal rate of interest on the foregoing sums; and

10       8.     For costs of suit, and for such further relief as the Court may order.

11  **Jury Demand**

12       Plaintiff hereby demands a trial by jury on all issues and causes of action on which the

13  right to trial by jury is guaranteed.

14  June 11, 2019                 PESTOTNIK LLP

15

16                              By: _____

17                                Ross H. Hyslop
                              *Attorneys for Plaintiff MATTHEW D. GREENE on*

18                                *behalf of himself, the proposed class(es), all others*
                              *similarly situated, and on behalf of the general public*

19

20

21

22

23

24

25

26

27

28

## AFFIDAVIT PER CIVIL CODE § 1780(d)

I, Ross H. Hyslop, declare:

1.      I am an attorney licensed to practice law in this state and before this Court. I am a partner with Pestotnik LLP, counsel of record for Plaintiff Matthew D. Greene ("Plaintiff") in this action. I make this declaration per Civil Code § 1780(d). If called upon to testify, I would competently testify as set forth herein. I know the matters stated herein of my own personal knowledge. Without limitation, such personal knowledge comes from:

        a.      my review and analysis of the motorcycle purchase and sale documentation provided to me by Plaintiff; and

        b.      personal visits by me and my private investigator to the motorcycle dealership (TMCSF, Inc. dba Riverside Harley-Davidson) at which Plaintiff purchased his motorcycle.

2.      This action has been commenced in Riverside County, which is a proper county under Civil Code § 1780(d), insofar as it is the County in which the transaction occurred. Thus, Riverside County is the proper place for the trial of the action.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct and that this declaration was executed on June 11, 2019, at San Diego, California.

_____
Ross H. Hyslop